262 P.2d 957

BOWMAN

v.

HAYWARD et al.

No. 7918.

Supreme Court of Utah.

Nov. 16, 1953.

Moss & Hyde, Salt Lake City, for appellant.

Jones & Jones, Shirley P. Jones, Jr., Salt Lake City, for respondent.

WOLFE, Chief Justice.

Plaintiff, a former prisoner in the Salt Lake County Jail, commenced this action to recover damages in the sum of $10,000 for an alleged assault and battery committed upon his person while so incarcerated. On October 30, 1951, he was working as a trusty in the Salt Lake County Garage assigned to the duty of washing cars. At approximately 8:00 a. m. defendant Norman D. Hayward, a deputy sheriff, while on duty appeared in the garage and asked plaintiff to wash his private automobile. Plaintiff refused. Thereupon defendant Hayward became angry, used abusive language, threatened severe penalties if plaintiff did not wash the car as ordered, and left the garage to pursue his duties as deputy sheriff in the company of his colleague, Deputy Sheriff Rex J. Treseder. In the afternoon, defendant Hayward returned to the garage, discovered that plaintiff had not washed the car as ordered, and proceeded to attack and abuse the plaintiff who was pushed against automobiles, seized and dragged down an alley toward the office of the county jail. In the ensuing struggle, plaintiff, who is small in stature, partially freed himself, and then defendant Hayward struck the plaintiff with his fist, knocking him down. Momentarily plaintiff recovered from the blow and ran back into the garage. Defendant Hayward then obtained the assistance of Deputy Treseder who had been waiting in an official car close to the scene of the altercation. The two men followed plaintiff into the garage, and took him to the office of the county jail without further incident.

Chief Deputy Sheriff T. A. Callicott testified that he was on duty when plaintiff was brought into the office; and that defendant Hayward stated that he had experienced "some difficulty" with the plaintiff "about washing his car" and that plaintiff had refused "to accompany him to the office of the jail." Plaintiff refused to make any statement to Callicott concerning the incident, did not complain of his injuries, and until this action was commenced, he assured several officers that he was not injured; he "just didn't want to be pushed around."

We have expressed plaintiff's version of the assault and battery since the verdict was against defendant Hayward. Plaintiff's complaint demanded joint and several judgment against Hayward, George Beckstead as sheriff of Salt Lake County, Hart-

ford Accident and Indemnity Company which wrote the official bond for Deputy Hayward, and the United States Fidelity and Guarantee Company which wrote the official bond for Sheriff Beckstead. The case was submitted to a jury upon instructions of the court and a verdict was returned in favor of the plaintiff and against defendant Hayward, not as deputy sheriff but in his private capacity, assessing damages in the sum of $150. No verdict was found against the other defendants.

Plaintiff and defendants George Beckstead, Hartford Accident and Indemnity Company and the United States Fidelity and Guarantee Company petitioned the court for a judgment on the verdict for attorney's fees as provided by Utah Code Anno.1953, 78–11–10. The lower court refused plaintiff's petition, awarded attorney's fees to defendant Beckstead in the sum of $25, and refused to award attorney's fees to the other defendants. The above statute provides in part that in an action against any sheriff, constable, or upon the bond of such officer, the "prevailing party" shall recover from the losing party "such sum as counsel fees as shall be allowed by the court", when such action "arises out of, or in the course of the performance of his duty, or in any action upon the bond of any such officer". A concomitant provision is found in the Utah Code Anno.1953, 52–1–8, which enables a person who is injured "by *official misconduct*" of a public officer to maintain an action on the bond of such

official. (Italics added.) Contrary to plaintiff's contention on cross-appeal, we believe these statutes evidence a legislative intent to allow attorney's fees to a successful plaintiff only when official misconduct is involved as distinguished from private acts. The lower court construed the statute in accordance with the foregoing; however, all the defendants as prevailing parties, excepting defendant Hayward, appeal on the ground that the lower court acted arbitrarily and capriciously in awarding only $25 attorney's fees to Beckstead and nothing to the indemnity companies. A discussion of defendants' contention is unnecessary since the case is resolved on the plaintiff's contention on cross-appeal that defendant Hayward was acting in his official capacity and that the lower court erred in its instructions to the jury after timely objection by plaintiff. We agree; consequently, plaintiff is entitled to a joint and several judgment against all the defendants, and to attorney's fees.

In the instructions to the jury, the lower court attempted to distinguish official acts from acts of a private trespasser by use of the following language:

"Instruction No. 2a. * * * If, however, your finding from the evidence is that Hayward committed the assault as alleged while acting out of and beyond the scope of his official capacity then I instruct you that he would alone be personally liable for such wrong doing and his bondsmen

would not be liable for such conduct, nor likewise would George Beckstead or his bondsmen be liable for such conduct upon the part of Hayward. In other words, Hayward would then be acting as a private individual not within his official capacity, rendering only himself liable for such wrongful acts.

"Instruction No. 2(4). Before you can render a verdict against George Beckstead or his bondsmen, the United States Fidelity and Guarantee Company, a corporation, or Hayward's bondsmen, the Hartford Accident and Indemnity Company, a corporation, it is further necessary * * * that the plaintiff prove by a preponderance of the evidence that said Hayward, at the time of making the alleged assault and battery upon the plaintiff Bowman, was acting as a deputy sheriff in his official capacity under George Beckstead, his superior.

"Instruction No. 6. You are instructed that before you can find that the Sheriff George Beckstead is liable for the acts and conduct of his deputy Hayward you must find by a preponderance of the evidence that defendant Hayward *was acting in his official capacity as a deputy sheriff carrying out the duties and directions of his superior in the administration of his office and official character.*

\* \* \* \* \* \*

"On the other hand, if you find that Hayward in his conduct * * * was carrying out some official duties of the office of Sheriff and that in so carrying out such official duties he exceeded his authority unlawfully, then and in that event George Beckstead, his principal, and both bondsmen would be liable for such excesses of conduct upon his part."

It is difficult for us, not to mention a jury, to ascertain a clear test of liability from the foregoing instructions; repeated use of the term "official capacity" merely recites a legal conclusion; the phrase "duties and directions of his superior" is overly restrictive. In Geros v. Harries, 65 Utah 227, 236 P. 220, 224, 39 A.L.R. 1297, speaking of liability of a surety on a sheriff's bond, we quoted 24 R.C.L. 965, Sec. 59, as follows:

"The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? If he assumed to act as an officer—whether under valid or void process, or under no process whatever—the bondsmen should be held, as he is held, for they are the sponsors of his integrity as an officer while acting as such."

In the above case we mentioned the various tests attempted by the courts and reasoned as follows:

"In nearly all of the cases cited it is pointed out that the refinement or supposed distinction between acts that

were termed to have been committed colore officii or virtute officii is as useless in practice as it is obscure in meaning, * * * and the only test that is applied is the one we have quoted from the text of 24 R.C.L. supra."

The reason for the broad test of liability cited above is found in Clancy v. Kentworthy, 74 Iowa 740, 35 N.W. 427, 428, and the many decisions which adopt the reasoning of the Iowa court, as follows:

"In truth his act was in the line—direction—of official duty, but was illegal because it was in excess of his duty. In the discharge of official functions he violated his duty, and oppressed the plaintiff. This is all there is of it. If, in exercising the functions of his office, defendant is not liable for acts because they are illegal or forbidden by law, and for that reason are trespasses or wrongs, he cannot be held liable on the bond at all, for the reason that all violations of duty and acts of oppression result in trespasses or wrongs. For lawful acts in discharge of his duty he of course is not liable. It follows that, if defendant's position be sound, no action can be maintained upon the bond in any case."

The evidence so overwhelmingly supports the conclusion as to make it a matter of law that Hayward's official position prompted the oppressive act—"clothed with his official character," he "assumed to act as an officer," and abused authority wholly derived from the office of deputy sheriff.

Sheriff Beckstead has the duty to take "charge of and keep the county jail and the prisoners therein", Utah Code Anno.1953, 17–22–2. Defendant Hayward was representing the sheriff in the performance of this duty. The evidence indicated that it was customary for trusties working in the Salt Lake County Garage to wash the private cars of various officers and officials for which service the trusties were paid. Although his testimony does not make it so, defendant Hayward testified that he had the power as deputy sheriff to require the washing of his personal car by a trusty; the testimony does show his state of mind—the intention to act as an officer. He answered the following question in the affirmative:

"Then as far as you were concerned you were perfectly within your authorities, within your duties, the way you acted and behaved in regard to this particular car, is that right?"

Further, Chief Deputy Sheriff T. A. Callicot testified as follows:

"Q. Do you think that he [a deputy sheriff] would have a right to forcibly bring a prisoner back to the office if a prisoner refused to wash the car? A. Yes sir.

"Q. Do you think that would be within the scope of his authority? A. Yes sir."

The liability of Sheriff Beckstead and his surety follows from the inescapable conclusion that Hayward was acting in his official capacity. Liability is grounded on

the theory that "the deputy is the representative of the sheriff, and his acts are those of the sheriff". Nelson v. Bartell, 4 Wash. 2d 174, 103 P.2d 30, 33; Lorah v. Biscailuz, 12 Cal.App.2d 100, 54 P.2d 1125. Since Deputy Hayward acted by reason of his official capacity, though unlawfully, the sheriff is deemed to have so acted, and liability arises accordingly. We are mindful that in many instances a deputy's act may be unofficial, a private act for which neither his sureties nor his executive officer will be liable. This is not such a case.

■ Plaintiff next contends on cross-appeal that the verdict for $150 compensatory damages is erroneously low and that he should have a new trial on this issue alone. We think not. This action does not involve punitive damages and the compensatory damages although low for such an affront to one's person and feelings are not so low as to require a reversal on that ground, the limited evidence as to damages indicating the jury did not abuse its discretion.

Reversed and remanded to determine counsel fees in favor of plaintiff and against Deputy Hayward, Sheriff Beckstead and the indemnity companies and to enter a joint and several judgment in accordance with the views expressed.

Costs to respondent.

McDONOUGH, CROCKETT, and WADE, JJ., concur.

HENRIOD, J., not participating.