445 P.2d 367

**Paul Ray SHEFFIELD, Plaintiff and Appellant,**

**v.**

**John TURNER, Warden of the Utah State Prison; State of Utah; John Does 1, 2, 3, etc., Defendants and Respondents.**

**No. 10837.**

Supreme Court of Utah.

Sept. 23, 1968.

 

Hatch & McRae, Robert M. McRae, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., D. Gilbert Athay, Asst. Atty. Gen., Salt Lake City, for respondents.

CROCKETT, Chief Justice:

Plaintiff, Paul Ray Sheffield, an inmate of the State Prison, sued the Warden, John Turner, certain John Does, and the State of Utah, for damages which resulted when plaintiff was stabbed by a fellow prisoner, causing him to lose the sight in one eye. The district court granted defendants' motion to dismiss. On appeal, plaintiff does not contest the dismissal as to the State of Utah, but does as to the Warden.

In considering the propriety of the dismissal as to the Warden there are two significant facts to be borne in mind: First, the complaint is not based upon any action done by the Warden personally, but upon alleged conduct through his employees; and, second, that it is based only upon negligence, and not upon any wilfully wrong or malicious act. The essence of the complaint is that the Warden permitted his employees to supervise the inmates of the prison in a negligent manner based on these facts: knowledge that the offending inmate, one Bassett, had a propensity for violence; that he was in possession of a sharp metal object like an ice pick; that he was allowed outside of his own designated area; and that he was thus enabled

to enter the plaintiff's quarters and inflict injury upon him. Wherefore, he prays judgment against the Warden for $100,000.

■ The anciently established and almost universally recognized general rule which this court has consistently announced and adhered to is that the government, its agencies and officials performing governmental functions are protected by sovereign immunity.[1] A question arises as to whether this rule is rendered inapplicable here by what is referred to as the Utah Governmental Immunity Act.[2] Sec. 63–30–10 of that Act waives immunity for governmental entities in certain specified circumstances. However, Subsection 10 preserves immunity to such "entities" when the injury "arises out of incarceration of any person in any state prison * * *." Sec. 63–30–2(3) provides that entity "shall mean and include the state and its political subdivisions as defined herein; * * *." A political subdivision is defined in (2) as "any county, city, town, school district, special improvement or taxing district, or any other political subdivision or public corporation: * * *."

■ ■ Inasmuch as the statutes just referred to plainly retain sovereign immunity

to the state for any injury arising out of incarceration in the prison, the trial court correctly dismissed the complaint as to it. However, it is equally plain that under no reasonable construction of the statute could the Warden be deemed a governmental "entity." Thus he is not affected by the retention of immunity and it is necessary to look to the law independent of those statutes to determine the question of his liability.

■ There can be no question but that the maintenance of a state prison and the keeping of prisoners therein is a necessary auxiliary of government and therefore a governmental function, nor that consequently the performance of the duties incident thereto would normally be protected by the traditional rule of sovereign immunity.[3] In this connection it is appropriate to point out that this does not constitute a carte blanche protection for anything that may be done or permitted in a prison. We are not unmindful of the dangers of abuse and injury which may be inflicted upon persons who are confined with others with a known propensity for violence, nor the necessity for protection of prisoners who could be subjected to multifarious forms of abuse

1. See Sehy v. Salt Lake City, 41 Utah 535, 125 P. 691, 42 L.R.A.,N.S., 915; Bingham v. Board of Education of Ogden, 118 Utah 582, 223 P.2d 432; Niblock v. Salt Lake City, 100 Utah 573, 111 P.2d 800; Springville Banking Co. v. Burton, 10 Utah 2d 100, 349 P.2d 157.

2. Chapter 139, S.L.U.1965, effective July 1, 1966.

3. See Prosser on Torts, § 126, pp. 1013–1019 (1964), for a statement of this principle and various rulings thereon from a number of jurisdictions.

or brutality. We quite willingly agree that they should not be "thrown to the wolves" without protection, and that some safeguards should be maintained to prevent such abuse or injury.

On the other side of this proposition is the imperative need for those in a supervisory capacity to have reasonable freedom to discharge the burdensome responsibilities of keeping in confinement and maintaining discipline of a large number of men who have been convicted of serious crime. If such officials are too vulnerable to lawsuits for anything untoward which may happen to inmates a number of evils follow, including a breakdown of discipline and the fact that capable persons would be discouraged from taking such public positions.[4]

■ Upon our consideration of the various aspects of the problem and an examination of the authorities which have dealt with it, it is our opinion that in a situation such as this, where one inmate has injured another, the warden and other prison officers are protected by the doctrine of sovereign immunity against claims of negligence so long as they are acting in good faith and within the scope of their duties, and that they could not be held liable unless they were guilty of some conduct which transcended the bounds of good faith performance of their duty by a wilful or malicious wrongful act which they know or should know would result in injury.[5]

■ The plaintiff's amended complaint, charging the Warden with negligence as indicated in the fore part of this opinion, fails to meet the test above set forth. The order dismissing the complaint is affirmed. No costs awarded.

CALLISTER, HENRIOD, TUCKETT and ELLETT, JJ., concur.

4. See discussion of the necessity that officers be immune from liability in order to insure effective administration, Kenneth Culp Davis, "Administrative Officers' Tort Liability," 55 Mich.L.Rev. 233 (1956).

5. C. F. St. Julian v. State of Louisiana, La.App., 98 So.2d 284 (1957), where the court summarized the standard as follows: "The general rule gathered from the cases is that in order to hold the State or the employees of a state who have charge of a prison liable for injury to one inmate inflicted by another inmate, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, * * *" and that in addition to such knowledge there must also be negligence in order to establish liability, citing Stephens v. Conley, 48 Mont. 352, 138 P. 189; Kusah v. McCorkle, 100 Wash. 318, 170 P. 1023, L.R.A.1918C, 1158; Ratliff v. Stanley, 224 Ky. 819, 7 S.W.2d 230, 61 A.L.R. 566; Riggs v. German, 81 Wash. 128, 142 P. 479; Gunther v. Johnson, 36 App.Div. 437, 55 N.Y.S. 869; as to liability for wilful wrongful acts see Richardson v. Capwell, 63 Utah 616, 176 P. 205 (1918); Bowman v. Hayward, 1 Utah 2d 131, 262 P.2d 957 (1953); Benally v. Robinson, 14 Utah 2d 6, 376 P.2d 388 (1962).